1998-NMCA-077

960 P.2d 827

**Deborah BRANSFORD, Petitioner–Appellant,**

v.

**STATE of New Mexico TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Respondent–Appellee.**

**and**

**Joe M. JARAMILLO, Petitioner–Appellee,**

v.

**STATE of New Mexico TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Respondent–Appellant.**

**No. 18101, 18385.**

Court of Appeals of New Mexico.

April 30, 1998.

Tom Udall, Attorney General, Judith Mellow, Special Assistant Attorney General, Santa Fe, for Respondent–Appellee and Respondent–Appellant State of New Mexico.

Gary C. Mitchell, Gary C. Mitchell, P.C., Ruidoso, for Petitioner–Appellant Deborah Bransford.

Gerald E. Baca, McClaugherty, Silver, Downes, Baca & Ellington, P.C., Las Vegas, for Petitioner–Appellee Joe M. Jaramillo.

## OPINION

BOSSON, Judge.

{1}   These two cases have been consolidated at the request of the Motor Vehicle Division (MVD) because they both address foundational requirements for breath and blood alcohol tests in drivers' license revocation proceedings conducted pursuant to the Implied Consent Act, NMSA 1978, §§ 66–8–105 to –110 (1978, as amended through 1993). The issue common to both cases is whether the State, in offering these test results into evidence in license revocation proceedings, may lay the necessary foundation for those test results by a means other than live testimony. We hold that the State may do so, and we affirm the district court in both instances.

{2}   We address first *Jaramillo v. State of New Mexico, Taxation & Revenue Department* which concerns the foundation for the results of breathalyser tests when an issue is raised regarding the reliability or validity of the test results by a challenge to the calibration of the testing instrument. We next address *Bransford v. State of New Mexico, Taxation & Revenue Department* which concerns the foundation for admission of blood test results in license revocation proceedings.

## JARAMILLO

{3}   On August 6, 1995, Jaramillo was stopped for failure to dim his headlights. The officer smelled alcohol, and Jaramillo admitted he had consumed some beer. He had slurred speech and blood-shot eyes; he was not able to understand the officer's instructions; and he was not able successfully to complete a field sobriety test. The officer believed that Jaramillo was driving while intoxicated and arrested him. Jaramillo subsequently consented to a breathalyser test, *see* § 66–8–107, which produced results of .21, .20 and .22. MVD served Jaramillo with a notice of revocation under the Implied Consent Act. *See* NMSA 1978, § 66–8–111.1 (1993) (requiring written notice of revocation and right to a hearing).

{4}   At the October 3, 1996 license revocation hearing, the officer testified that he had administered the breath test to Jaramillo. Although the officer was certified to administer such a test, he was not the key operator, nor was he the person who calibrated the breathalyser machine. Jaramillo objected to the lack of any foundation showing that the breathalyser test result was accurate and reliable or that the machine had been properly calibrated.

{5}   The officer was the sole live witness. He testified that he obtained the breath test results from a log book located in the office within the police department where the breathalyser machine was kept. The log book entries were admitted into evidence. The officer recognized his sergeant's signature on the log book, and he identified his sergeant as the person who performed the calibration functions on the breathalyser machine, stating "that's what tells us they have been checked by our supervisor." The log book entries show that Jaramillo's breathalyser test was performed on August 6, 1995 with the indicated results. The log book further indicates that a "self-test" was performed on August 1, 1995, within seven days of Jaramillo's test. The log book does not explain what a "self-test" is or how it demonstrates proper calibration of the machine. The officer did not offer any explanation of the "self-test" or even any testimony that the machine appeared to be operating correctly on the day of Jaramillo's test.

{6}   Without any direct evidence of calibration, the hearing officer nonetheless took

"administrative notice" that the breathalyser machine had been checked for calibration because that was provided for in the regulations of the scientific laboratory division. The hearing officer admitted the test results into evidence and sustained Jaramillo's license revocation. On appeal, the district court reversed, concluding that when the calibration of a breathalyser machine is at issue, a key operator must testify to establish a foundation that the machine was in proper working order at the time of the test.

DISCUSSION

{7} We have previously held that upon proper objection, the State has the burden of making a threshold showing that the breathalyser machine provides valid results. This is part of the foundation for admission of breath test results into evidence. *See Plummer v. Devore*, 114 N.M. 243, 245, 836 P.2d 1264, 1266 (Ct.App.1992); *see also* Rule 11–104(B) NMRA 1998 (requiring "evidence sufficient to support a finding of the fulfillment of the condition"). Thus, when an issue is raised regarding the validity or reliability of a breathalyser test result, some threshold showing is required that the machine was properly calibrated or that it was otherwise functioning properly at the time of the test. *Plummer*, 114 N.M. at 246, 836 P.2d at 1267.

{8} Although the log book in the present case indicates that a "self-test" was performed within seven days of Jaramillo's breathalyser test with a test result of ".00," the State offered no explanation of what that means and how it was derived. Raw data of this kind may not be self-explanatory, and it was not unreasonable that the district court did not find it so. It is unclear how the data indicates proper calibration or whether the breathalyser machine was working properly. *Cf. State v. Ruiz*, 120 N.M. 534, 540, 903 P.2d 845, 851 (Ct.App.1995) (officer testified that he was very familiar with Intoxilyzer 5000, and that it appeared to be working properly, and the state introduced an exhibit demonstrating machine had been calibrated within seven days of the defendant's test); *State v. Henderson*, 100 N.M. 260, 262, 669 P.2d 736, 738 (Ct.App.1983) (admission of "automated teller" photos under "silent-witness" theory

upheld where foundation evidence included testimony concerning film developing procedure).

{9} Jaramillo specifically challenged the calibration of this machine and thereby created an issue of fact. Because that issue of fact was not answered by either the log book or by the officer's limited testimony, it was inappropriate for the hearing officer to take "administrative notice" of the machine's proper calibration when that was the very fact placed at issue. Although TRD Rule MVC 8–112:7(B) sets forth that the "hearing officer may take notice of judicially cognizable facts and of general technical or scientific facts and of other facts within the specialized knowledge of the Division," the machine's calibration is hardly such a "fact." Upon demand, it requires some level of proof. *See Plummer*, 114 N.M. at 245, 836 P.2d at 1266.

{10} How must the State make this threshold showing in a license revocation hearing? We recognize that these kinds of proceedings are intended to be expedited, and therefore we do not agree with the district court that calibration can only be established by live testimony. In license revocation proceedings, when the reliability or validity of the breath test result is at issue, evidence of proper calibration may be set forth by affidavit or certification by an appropriate, qualified witness, indicating that the breathalyser machine was properly calibrated within seven days of the test at issue or that the breathalyser machine was in proper working order on the day in question. This procedure appears to be consistent with what is done in many other jurisdictions. *See, e.g., State v. Smith*, 66 Or. App. 703, 675 P.2d 510 (1984) (documents certifying that the breathalyser equipment was in proper operating order admitted as a public record); *Commonwealth v. Sloan*, 414 Pa.Super. 400, 607 A.2d 285, 293 (1992) (certificate of calibration, when offered into evidence with a certificate of accuracy, should be presumptive evidence of the completion of the proper testing for accuracy of the breath testing equipment); *Kehl v. Schwendiman*, 735 P.2d 413, 417 (Utah Ct.App. 1987) (court acknowledges financial burden to call live witnesses in driving under the

influence cases, thereby acknowledging that an affidavit may be used to establish reliability and accuracy of breathalyser evidence). *Cf. State v. Christian*, 119 N.M. 776, 782–83, 895 P.2d 676, 682–83 (Ct.App. 1995) (in *criminal* cases, a confrontation clause satisfied when witness knowledgeable about the testing procedure and manner in which report was complied is available for cross-examination).

■ {11} We also hold that the foundation for test results may be satisfied by adherence to the Rules of Criminal Procedure for the Metropolitan Courts, Rule 7–607(A)(2) NMRA 1998, which provides:

A. **Admissibility.** In any prosecution of an offense within the trial jurisdiction of the metropolitan court, in which prosecution a convicted defendant is entitled to an appeal de novo, the following evidence is not to be excluded under the hearsay rule, even though the declarant may be available as a witness:

. . .

(2) a print-out produced by a breath-testing device which performs an analysis of the defendant's breath to determine blood alcohol concentration if:

(a) the law enforcement officer who operated the device is certified to operate the device by the scientific laboratory of the health and environment department [department of health]; and

(b) upon request, the calibration testing records for a reasonable period of time surrounding the defendant's test are made available to the defendant for inspection prior to trial. The defendant may request a copy to be made of the testing records at the defendant's expense.

We acknowledge that these rules are for Metropolitan Court proceedings in which a defendant has a right to a de novo appeal which is not available to Jaramillo. On the other hand, these rules allow introduction of test results without live testimony even in a criminal trial, which, as we shall later see, traditionally requires a higher standard of foundation evidence which is subject to cross-examination. We adopt Rule 7–607 as an appropriate analogy for how to lay the mini-

mum foundation for breath test results in these administrative hearings.

{12} In this case, the minimum foundation was not established either by live witness testimony, or by an affidavit or certification, or by such "calibration testing records" under Rule 7–607(A)(2) that the court could find self-explanatory. Administrative notice of such a contested issue was not appropriate. Accordingly, we affirm the district court's conclusion not to admit the test results under these circumstances.

## BRANSFORD

{13} Bransford was involved in a one-car accident. She was taken to the hospital where blood was extracted and samples were sent for analysis to the scientific laboratory division of the Department of Health. *See* NMSA 1978, § 24-1-22 (1981); § 66-8-107(B). A police officer subsequently testified that he was present when the nurse extracted blood from Bransford. The officer observed a technician seal the vial and place the vial in a box with the proper paperwork and a second seal, and the box was then sent to the laboratory for analysis.

{14} At the driver's license revocation hearing, a certified copy of the original report of the blood test analysis was admitted into evidence indicating that Bransford had an excessive blood alcohol concentration of .13. The report also contained a written certificate of both an analyst and a supervisor who asserted that they had "followed the procedures set out on the reverse" of the report, "that the statements in this block are correct[,]" and "that the established procedure has been followed in the handling and analysis of the sample in this case."

{15} The reverse side of the blood test report contains a detailed form certificate which attempts to lay a foundation for the admission of the report into evidence. It sets forth that the laboratory is certified by the Scientific Laboratory Division of the Health Department to perform blood and alcohol tests and that the laboratory followed established, formal procedures for receipt and handling of the blood sample to assure its integrity. The certificate on the reverse side also details the process by which the receiving clerk of the laboratory examines

the sample container and insures proper chain of custody. It details the process by which the analyst first receives and examines the sample container, then conducts a chemical analysis of the sample, and then notes any circumstance or condition which might affect the integrity of the sample or otherwise affect the validity of the analysis. Finally, the report sets forth that the supervisor has checked the calculation in the analysis and is qualified to do so.

{16} When the officer testified to the blood test results in the report, Bransford objected on the ground of hearsay. The officer, of course, had no personal knowledge of the test results, and there was no live foundation testimony from qualified laboratory or other scientific personnel concerning the blood test procedures and the results. Bransford's brief in chief points out that apparently her subsequent criminal conviction for DWI was eventually reversed for this very reason. Bransford raises a similar issue in this appeal regarding the reliability of the test results and whether the particular test was capable of producing valid results.

DISCUSSION

{17} Initially, we note that the reverse side of the blood test report establishes a threshold showing of reliability. It specifically sets forth various quality control procedures that include a proficiency testing by an independent laboratory, and the report asserts that these procedures have the general acceptance of the scientific community. No challenge is made to the reliability of the particular laboratory equipment, and even if it were, the certificate on the reverse side of the blood test report makes a threshold showing of reliability.

{18} Bransford's primary objection to the admission of the blood test results into evidence is based on hearsay. In administrative proceedings, both hearsay and non-hearsay evidence may be considered. *See In re Termination of Boespflug*, 114 N.M. 771, 774, 845 P.2d 865, 868 (Ct.App.1992) (an administrative body is not required to follow the formal rules of evidence); *see also Ferguson–Steere Motor Co. v. State Corp. Comm'n*, 63 N.M. 137, 143–44, 314 P.2d 894, 898 (1957) (the hearsay rules do not apply to adminis-

trative hearings). However, the legal residuum rule requires that an administrative action be supported by some evidence that would be admissible in a trial. *See Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 128, 767 P.2d 363, 367 (Ct.App.1988) (if the only support found is inadmissible hearsay, then the reviewing court may set aside the agency's finding or decision); *Anaya v. State Personnel Bd.*, 107 N.M. 622, 626, 762 P.2d 909, 913 (Ct.App.1988) (admissible hearsay may satisfy the legal residuum rule). The revocation of a driver's license is an administrative adjudication that affects a substantial matter. Therefore, we require a residuum of competent evidence which would support a verdict in a court of law. *See Trujillo v. Employment Sec. Comm'n*, 94 N.M. 343, 344, 610 P.2d 747, 748 (1980).

{19} Under the Implied Consent Act, revocation of a driver's license is premised upon the hearing officer finding that the test results showed a blood alcohol concentration at or over an indicated percentage. *See* § 66–8–112(F)(4). Unlike criminal DWI trials, license revocation cannot be based solely upon the observation of the police officer; it depends upon the blood alcohol test result. *City of Portales v. Shiplett*, 67 N.M. 308, 309, 355 P.2d 126, 126 (1960). Therefore, the test result is critical evidence; without it there can be no legal residuum to support the license revocation. We must consider whether the blood test result was inadmissible hearsay or whether it fit within a recognized exception. *See, e.g., State v. Rivera*, 115 N.M. 424, 429, 853 P.2d 126, 131 (Ct.App.1993) (admission of hearsay evidence is reviewed for a clear abuse of discretion). In particular, we examine the exceptions for business records and public records. *See* Rule 11–803(F), (H) NMRA 1998.

{20} This Court has previously admitted blood test results in DWI criminal trials under the business records exception. *See* Rule 11–803(F) (records of regularly conducted activity); *Christian*, 119 N.M. at 779–81, 895 P.2d at 679–81 (blood report admitted as a record of regularly conducted activity); *see also Ruiz*, 120 N.M. at 536–38, 903 P.2d at 847–49 (calibration logs of breathalyser

machine admissible as business record). In criminal trials under Rule 11–803(F), foundational material concerning regularly conducted business activity is supplied by testimony from a "custodian or other qualified witness." In this administrative proceeding, most of the foundation came through the certificate on the reverse side of the blood test report without any live testimony.

{21} We recognize that in the customary criminal or civil proceeding, Rule 11–803(F) generally requires live testimony. *See State v. Ramirez,* 89 N.M. 635, 646, 556 P.2d 43, 54 (Ct.App.1976) (business records exception requires testimony as to the record's mode of preparation and its safekeeping). However, Sixth Amendment confrontation clause concerns are not implicated in license revocation administrative proceedings, and thus, foundational material may be provided by way of some other means. *See Christian,* 119 N.M. at 779–81, 895 P.2d at 679–81; *see also State Dep't of Motor Vehicles v. Bremer,* 113 Nev. 805, 942 P.2d 145, 148 (1997) (recognizing that only criminal defendants may object to the use of affidavits by persons testing blood). Therefore, for the limited purpose of admitting blood or breath test results in license revocation proceedings, we hold that evidence to satisfy the business record exception may be offered by other than live testimony. This is consistent with interpretations elsewhere regarding the exception to the hearsay rule in administrative proceedings. *See, e.g., Woolsey v. National Transp. Safety Bd.,* 993 F.2d 516, 520 (5th Cir.1993) (noting "that a slightly lower standard for admission of documentary evidence applies in administrative proceedings"); *United States v. Hines,* 564 F.2d 925, 928 (10th Cir.1977); *Gallagher v. National Transp. Safety Bd.,* 953 F.2d 1214, 1218 (10th Cir.1992) (in order to be admissible for consideration in an administrative proceeding, the evidence need not be authenticated with the precision demanded by the Federal Rules of Evidence). It is also consistent with how license revocation proceedings are administered elsewhere. *See Narsh v. Director of Revenue,* 878 S.W.2d 82, 83 (Mo.Ct.App.1994) (breathalyser maintenance report is admissible in driver's license revocation proceeding pursuant to business record exception, with

affidavit identifying document and describing preparation and maintenance of the document as a business record).

{22} Once again, we look to the Rules of Criminal Procedure for the Metropolitan Courts for an appropriate analogy which can be utilized in license revocation proceedings. Rule 7–607(A)(1) does not require live testimony to admit:

(1) a written report of the conduct and results of a chemical analysis of breath or blood for determining blood alcohol concentration and the circumstances surrounding receipt and custody of the test sample if:

(a) the report is of an analysis conducted by a laboratory certified by the scientific laboratory division of the health department to perform breath and blood alcohol tests;

(b) the report is on a form approved by the supreme court and is regular on its face; and

(c) a legible copy of the report was mailed to the donor of the sample at least ten (10) days before trial [.]

The detailed certificate on the reverse side of the blood test report is "on a form approved by the supreme court," and the information set forth in the report is substantially the same as that provided in the supreme court form. *See* Rule 9–505 NMRA 1998.

{23} Accordingly, we hold that the blood test report, and specifically the extensive information provided in the certificate on the reverse side, provides enough to satisfy the foundational elements of the business record exception, and the report was properly admitted. Parenthetically, we also note that the blood test result was properly admitted under the public records hearsay exception. *See* Rule 11–803(H); *Ramirez,* 89 N.M. at 645, 556 P.2d at 53 (admission pursuant to the public records exception does not require the testimony of custodian or other qualified witness); *Christian,* 119 N.M. at 781–82, 895 P.2d at 681–82 (blood-alcohol test admitted pursuant to public records hearsay exception); *see also United States v. DeWater,* 846 F.2d 528, 530 (9th Cir.1988) (actual results of the breathalyser test admissible pursuant to

public records exception); *State v. Smith*, 66 Or.App. 703, 675 P.2d 510 (1984) (certificates of breathalyser machine inspections admissible pursuant to public records exception).

CONCLUSION

{24} In *Jaramillo*, we affirm the order rescinding the revocation of driver's license. It was within the district court's discretion to conclude that, when challenged, MVD failed to set forth a sufficient threshold showing of the reliability or validity of the breathalyser test results and particularly the calibration of the machine. In *Bransford*, we affirm the revocation of driver's license on the basis that an adequate foundation was laid for the admission of the blood test results in this context.

{25} **IT IS SO ORDERED.**

APODACA and FLORES, JJ., concur.