1999-NMCA-154

994 P.2d 47

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Calvin SMITH, Defendant–Appellant.**

**No. 19,734.**

Court of Appeals of New Mexico.

Oct. 20, 1999.

Certiorari Denied, No.26,039,
Dec. 7, 1999.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Josephine H. Ford, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ARMIJO, Judge.

{1} Calvin Smith was convicted after a bench trial, in Metropolitan Court, of Driving

While Intoxicated (DWI), contrary to NMSA 1978, § 66–8–102 (1997). Following his conviction, Defendant appealed to the district court, which affirmed. Defendant presents only one issue on appeal to this Court: whether the results of his breathalyzer tests were properly admitted at trial. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

{2} At approximately 1:53 a.m., July 9, 1997, Officer Don Chavez of the Albuquerque Police Department observed Defendant duck down behind the dashboard of his truck which was parked, with its motor running and lights on, in the lot of the Gaslight Motel on Central Avenue. Officer Chavez watched Defendant's truck for some time, waiting for him to lift his head. Defendant, however, remained out of view. Believing Defendant's behavior to be suspicious, the officer approached the vehicle and asked Defendant what he was doing. He replied, "Trying to hide from you."

{3} In further speaking with Defendant, Officer Chavez noted his speech was slurred, that he had bloodshot and watery eyes, and that he had a "strong odor of alcoholic beverage" on his breath. The officer asked Defendant if he had been drinking, and Defendant replied that he had. Suspecting him of being drunk, Officer Chavez then administered three field sobriety tests on Defendant: the horizontal gaze nystagmus, the walk-and-turn, and the one-legged-stand tests. Defendant failed each. Officer Chavez then arrested him.

{4} Back at the police station, Officer Chavez administered two breathalyzer tests upon Defendant using an Intoxilyzer 5000 machine. Defendant failed both, blowing a 0.16% and a 0.14%.

{5} The State charged Defendant, by amended complaint, with DWI, first offense. He was tried on this charge at a December 30, 1997, bench trial. Officer Chavez was the only witness. On direct examination, he testified to Defendant's slurred speech, bloodshot and watery eyes, the smell of alcohol on Defendant's breath, and his admission that he had been drinking. He further testified that he administered three sets of field sobriety tests upon Defendant, who failed each.

He also noted that Defendant had difficulty exiting his vehicle, having to balance himself against it, and in following his instructions regarding the field tests. He testified that Defendant swayed throughout both the instructional and performance portions of the tests.

{6} Officer Chavez testified as well regarding his training and experience regarding the administration of breathalyzer tests using the Intoxilyzer 5000 machine. He testified that he had been certified to administer such tests for twelve years and that he had administered the test some 2000 to 3000 times. He further testified that there were no apparent problems with the machine or his administration of the test on July 9, 1997, when he administered the test on Defendant; that the machine conducted its internal self-calibration prior to Defendant's test; and that the record log attached to the machine indicated the machine had been calibrated within the past seven days. On cross examination, Officer Chavez testified that he was not involved in the calibration of the machine, but he did explain how the machine performs its self-calibration upon startup.

{7} When the State moved to admit the results of Defendant's breathalyzer tests, Defendant objected, arguing that Officer Chavez was not the custodian of the machine's calibration records and that the State had failed to adduce evidence regarding the machine's calibration. The trial judge admitted the results over this objection. Defendant was convicted and now appeals.

## DISCUSSION

{8} While Defendant raises only one issue on appeal, he approaches his argument from several angles. He contends error in the admission of his breathalyzer test results because (1) the State failed to demonstrate that they are reliable as scientific evidence; (2) the State failed to adduce evidence that the machine had been properly calibrated; and (3) the minimal foundational requirements for admission of breathalyzer tests in criminal proceedings, as compared with administrative proceedings, violate due process. We are not persuaded by these arguments

and for the reasons discussed below, we affirm the conviction.

**{9} 1. *Breathalyzer tests as scientific evidence.*** On appeal, Defendant claims that the trial court erred by admitting the results of his breathalyzer tests without first inquiring as to the scientific reliability of such evidence. *See* Rule 11–702, NMRA 1999. At trial, however, he made no argument regarding the reliability of these tests; nor did he argue, or even suggest, that such evidence was scientific in nature. *See State v. Cordova,* 1999–NMCA–144, ¶ 28, 128 N.M. 390, 993 P.2d 104 (1999); *cf. State v. Torres,* 1999–NMSC–010, ¶ 19, 127 N.M. 20, 976 P.2d 20. We therefore will not review Defendant's argument on this point because it was not preserved. *See State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993).

**{10} 2. *Evidence of calibration.*** The requirements for laying a proper foundation for the admission of breathalyzer test results in a criminal trial are well-established: "upon proper objection, there must be a threshold showing of the machine's validity as foundation for admission of the evidence." *Plummer v. Devore,* 114 N.M. 243, 245, 836 P.2d 1264, 1266 (Ct.App.1992). The State can meet this threshold requirement by presenting " 'evidence sufficient to support a finding' that the particular test was capable of producing valid results." *Id.* at 245–46, 836 P.2d at 1266–67 (quoting Rule 11–104(B) NMRA 1999)). This Court has previously held that the State has met this burden where the officer who administered the test testifies at trial that the machine had been calibrated within one week of the test. *See State v. Cavanaugh,* 116 N.M. 826, 829, 867 P.2d 1208, 1211 (Ct.App.1993). We have also held that the State has met this burden where the officer has testified as to his familiarity with the machine and that everything was in working order when the test was conducted. *See State v. Ruiz,* 120 N.M. 534, 540, 903 P.2d 845, 851 (Ct.App.1995).

**{11}** In the present case, Officer Chavez testified as to his significant experience in administering breathalzyer tests using the Intoxilyzer 5000, that is, 2000 to 3000 test administrations over a twelve-year time span. He also testified that the machine appeared to be in working order on the morning of July 9, 1997—the date and time of Defendant's tests—and that the log attached to the machine indicated that it had been calibrated within the previous seven days. Moreover, under defense counsel's cross-examination, Officer Chavez explained how the machine performed its self-calibration upon startup. We conclude that by presenting this testimony, the State discharged its burden of laying an adequate foundation for admitting the results of Defendant's tests under these cases.

**{12} 3. *Disparity in foundational requirements.*** Defendant next argues that his due process rights were violated in that the standard of foundation evidence required for admission of breath test results is higher for defendants in administrative license-revocation proceedings than for defendants in criminal proceedings. Although Defendant did not raise this particular argument below, the case upon which Defendant factually premises his argument, *Bransford v. State Taxation & Revenue Dep't, Motor Vehicle Div.,* 1998–NMCA–077, 125 N.M. 285, 960 P.2d 827, was not decided until several months after Defendant's trial. Under these circumstances, it can be fairly said that Defendant had no opportunity to make the particular objection. *See* Rule 12–216(A) NMRA 1999. In addition, because Defendant did otherwise contend in the trial court that the foundation was inadequate and because several cases currently raise the issue that the effect of *Bransford* is to deprive criminal defendants of due process of law, we exercise our discretion to consider Defendant's contention. *See* Rule 12–216(B)(1).

**{13}** As discussed above, all that is necessary to lay a proper foundation for the admission of breathalyzer test results in a criminal DWI trial is the live testimony of the officer who administered the test as to his familiarity with the testing procedure, the recent calibration of the machine, and his observation that the test administration proceeded without error. *See Cavanaugh,* 116 N.M. at 829, 867 P.2d at 1211; *Ruiz,* 120 N.M. at 540, 903 P.2d at 851; *cf. State v. Gutierrez,* 121 N.M. 191, 193, 909 P.2d 751,

753 (Ct.App.1995) (in dicta). Officer Chavez, as we have discussed, testified as to each of these points.

{14} Defendant appears to argue, however, that our recent opinion in *Bransford,* 1998–NMCA–077, ¶¶ 5, 8, & 9, 125 N.M. 285, 960 P.2d 827, imposes a more stringent standard; that is, he suggests that under *Bransford,* an officer's live testimony alone is insufficient to lay the appropriate foundation in an administrative proceeding. Accordingly, he argues, the applicable standard in administrative proceedings appears to be more strict than that applied in criminal trials, thus violating his right to due process. We are not persuaded.

{15} *Bransford* was a consolidated appeal. *See id.* ¶ 1. Defendant relies upon the first portion of that case, that pertaining to appellant Jaramillo. *See id.* ¶¶ 3–12. In an administrative hearing to revoke Jaramillo's driver's license, the State, upon his objection, attempted to lay the foundation for the admission of breathalyzer test results with the live testimony of an officer who could not testify as to whether the machine had been recently calibrated, how the admitted log book demonstrated that the machine had been calibrated, or how the machine performed its "self-test" upon startup. *See id.* ¶ 5. As we noted, this testimony failed to provide "any direct evidence of calibration" and therefore the test results were admitted in error. *Id.* ¶¶ 6, 9. This conclusion is entirely consistent with our precedent. *See Cavanaugh,* 116 N.M. at 829, 867 P.2d at 1211; *Ruiz,* 120 N.M. at 540, 903 P.2d at 851. We therefore find no merit in Defendant's constitutional argument. *See Bransford,* 1998–NMCA–077, ¶ 9, 125 N.M. 285, 960 P.2d 827 (noting that "some level of proof" is necessary to rebut an objection to the admission of breathalyzer test results).

{16} In fact, we view *Bransford* as announcing a less stringent method for establishing foundation for the admission of breathalyzer test results in the administrative context as compared to the criminal context. *See id.* ¶¶ 10–12 (allowing the State to lay appropriate foundation by affidavit in the absence of sufficient live testimony). Given the relative interests affected by a license revocation proceeding versus a criminal DWI trial, a relaxation of evidentiary rules exemplified by the allowance of affidavit, as opposed to live, testimony is appropriate. *See id.* ¶ 10; *accord In re Termination of Boespflug,* 114 N.M. 771, 774, 845 P.2d 865, 868 (Ct.App.1992) (noting that administrative hearing regarding the termination of public employee need not comply with all rules of evidence applicable in formal trials). The fact remains, however, that in this criminal trial, the officer laid an adequate foundation as required by our cases in his live testimony.

{17} Accordingly, because the foundation in any kind of evidence in *Bransford* was inadequate whereas the foundation in live testimony in this case was adequate, we conclude that Defendant's right to due process has not been violated.

**CONCLUSION**

{18} For the foregoing reasons, we affirm Defendant's conviction for DWI, first offense.

{19} **IT IS SO ORDERED.**

PICKARD, C.J., and BUSTAMANTE, J., concur.