2002-NMCA-082

51 P.3d 528

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Antonio ONSUREZ, Defendant–Appellant.**

**No. 21,987.**

Court of Appeals of New Mexico.

May 13, 2002.

Certiorari Denied, No. 27,588,
July 29, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

Kevin J. Hanratty, Hanratty Law Firm, Artesia, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Defendant was convicted in magistrate court of aggravated driving while intoxicated. He filed a de novo appeal, was convicted in district court, and now appeals his judgment and sentence. Defendant makes the following arguments: (1) the State failed to show the scientific reliability of the machine on which his breath was tested, (2) the State failed to show compliance with certain mandatory regulations of the State Laboratories Division (SLD) relating to the testing of his breath, and (3) the State failed to prove that the readings of the breath test machine were measured in grams of alcohol per 210 liters of breath. We affirm.

## BACKGROUND

{2} On May 25, 2000, Deputy Richard Sillas of the Eddy County Sheriff's Department found Defendant leaning against his vehicle, which was stuck in an irrigation ditch by the side of the road. Sillas testified that Defendant admitted to having had two beers. Defendant's eyes were bloodshot and watery, and he smelled strongly of liquor. He initially refused to take field sobriety tests, claiming that he would fall down if he moved away from his vehicle. Eventually, he took and failed the field sobriety tests. Sillas arrested Defendant and tested his breath on an Intoxilizer 5000 (IR–5000).

{3} Sillas testified that SLD had trained and certified him to operate the IR–5000, and to run calibration tests every seven days to insure that it performed within SLD standards. At the time of Defendant's arrest, the IR–5000 belonging to Eddy County was in Santa Fe, so Sillas used an IR–5000 belonging to the City of Carlsbad to test Defendant. Even though Sillas did not normally use this particular IR–5000, he had used the same model hundreds of times.

{4} Before testing Defendant's breath, Sillas checked to make sure the IR–5000 had been calibrated properly. It had last been calibrated on May 22, 2000, three days earlier. It was not calibrated again until May 30,

2000, five days after Defendant's breath test. This resulted in an eight-day interval between calibrations. Sillas also observed Defendant for twenty minutes before testing his breath to ensure that he did not "burp, vomit, cough for a long period of time," drink anything, or put any foreign matter in his mouth.

{5} Further facts will be provided as necessary.

## DISCUSSION

*Scientific Reliability and Compliance With SLD Regulations*

■ {6} At trial, the State began questioning Sillas about the operation of the IR–5000, and Defendant objected on the ground that Sillas was not qualified to testify about the science involved. The State countered that Sillas was only testifying about the physical operation of the machine and continued its questioning. The trial court did not rule on Defendant's objection but allowed questioning to continue. We construe the court's silence as a ruling that it was not necessary for Sillas to be qualified to testify about the scientific reliability of the breath testing.

{7} Defendant argues that the State had to prove the IR–5000 was scientifically reliable in accordance with *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (holding that trial court must determine whether purported scientific evidence meets threshold level of reliability), and *State v. Alberico*, 116 N.M. 156, 166–69, 861 P.2d 192, 202–05 (1993) (same). Defendant contends that because the State did not make such a showing, the trial court erred in admitting the results of his breath test.

■ {8} We review the trial court's admission or exclusion of evidence for abuse of discretion. *State v. Sarracino*, 1998–NMSC–022, ¶ 20, 125 N.M. 511, 964 P.2d 72. The trial court abuses its discretion when it admits evidence for which the necessary foundation has not been laid. *State v. Gardner*, 1998–NMCA–160, ¶ 5, 126 N.M. 125, 967 P.2d 465.

{9} The State contends it was not required to make a threshold showing that the testing satisfied *Daubert* and *Alberico* because Defendant had consented to such testing as a matter of law under the New Mexico Implied Consent Act (ICA). We agree with the State. The ICA provides:

A. Any person who operates a motor vehicle within this state shall be deemed to have given consent, subject to the provisions of the Implied Consent Act [66–8–105 to 66–8–112 NMSA 1978], to chemical tests of his breath or blood or both, approved by the scientific laboratory division of the department of health pursuant to the provisions of Section 24–1–22 NMSA 1978 as determined by a law enforcement officer, or for the purpose of determining the drug or alcohol content of his blood if arrested for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or drug.

B. A test of blood or breath or both, approved by the scientific laboratory division of the department of health pursuant to the provisions of Section 24–1–22 NMSA 1978, shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle within this state while under the influence of intoxicating liquor or drug.

NMSA 1978, § 66–8–107 (1993).

■ {10} The ICA requires that the test be "approved by the scientific laboratory division of the department of health pursuant to the provisions of Section 24–1–22 NMSA 1978." Section 66–8–107(B). The State satisfied this requirement through Sillas's testimony regarding his SLD training, the calibration of the machine, and the administration of the test. The State need not independently prove the scientific reliability of the test as part of its prima facie case. *See Gardner*, 1998–NMCA–160, ¶ 9, 126 N.M. 125, 967 P.2d 465 (holding that results of breath tests taken under the ICA may be admitted into evidence if "the tests [are] taken in accordance with department of health regulations"); *see also Woods v. State*, 593 So.2d 103, 105–06 (Ala.Crim.App. 1991) (holding breath test properly admitted

when prosecution showed compliance with regulations of state board of heath regarding test; trial court did not err in refusing to allow defense to cross-examine officer about internal workings of machine); *State v. Sensing,* 843 S.W.2d 412, 416 (Tenn.1992) (testing officer need not be able to explain scientific validity of breath test results if he can testify that test was conducted according to regulations); *cf. Williams v. Dist. of Columbia,* 558 A.2d 344, 346 (D.C.1989) (holding that prosecution did not have to show breath testing admissible under *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir. 1923), after legislature endorsed breath testing). The district court did not abuse its discretion in overruling *sub silentio* Defendant's challenge to the admission of his breath test results based on failure to satisfy *Daubert* and *Alberico.*

*Compliance With SLD Regulation Requiring Certification of Machine*

■ {11} Defendant argues that the district court abused its discretion in admitting the breath test results because the State did not prove that the IR–5000 was certified as required by SLD regulation. The relevant regulation states that "SLD-approved breath alcohol testing instruments used by New Mexico law enforcement agencies shall be certified by SLD to conduct breath alcohol tests provided that all criteria for certification are met." 7 NMAC § 33.2.11.1 (1996).[1]

{12} The State contends that it laid a proper foundation for admission of the test results by introducing Sillas's testimony regarding his certification to test the IR–5000, his experience administering the breath test, the weekly calibrations of the IR–5000, and his opinion that the IR–5000 was working properly at the time he used it to test Defendant. The State argues that this evidence is all our case law requires. *See State v. Smith,* 1999–NMCA–154, ¶¶ 15–16, 128 N.M. 467, 994 P.2d 47 (holding that live testimony of administering officer is sufficient evidence of proper calibration); *State v. Montoya,* 1999–NMCA–001, ¶ 10, 126 N.M. 562, 972

P.2d 1153 (showing that machine had been calibrated within seven days previous to test of defendant was sufficient compliance with regulation requiring calibration every seven days for admissibility purposes); *State v. Ruiz,* 120 N.M. 534, 535, 903 P.2d 845, 846 (Ct.App.1995) (determining that test results were validated when testing officer testified that he was familiar with the machine and it appeared to be working properly); *State v. Cavanaugh,* 116 N.M. 826, 829, 867 P.2d 1208, 1211 (Ct.App.1993) (holding that evidence of proper calibration was sufficient foundation for admission of breath test results). Although the State laid a foundation consistent with this case law, Defendant raises a point that New Mexico appellate courts have not previously considered: whether the State must show that a machine is certified in compliance with SLD regulations as part of the foundation for the admission of breath test results from that machine.

{13} The regulation at issue provides that SLD's annual certification of the machine is contingent upon satisfactory completion of several specific requirements, including annual SLD inspection, agency maintenance of adequate records, and weekly calibration checks by the agency using the machine. *See* 7 NMAC 33.2.11.1 to 33.2.11.9. Because weekly calibration is only one of the requirements for certification, 7 NMAC 33.2.11.7, Defendant correctly argues that proof of calibration cannot substitute for proof of certification. In *Gardner* we held that "following the 1993 amendments to the DWI laws, in order for persons to be deemed to have given their consent to blood or breath alcohol tests, and in order for those test results to be admitted into evidence, the tests must have been taken in accordance with department of health regulations." *Gardner,* 1998–NMCA– 160, ¶ 9, 126 N.M. 125, 967 P.2d 465. Thus, the foundational requirements cited by the State remain viable, but the regulations require more. Consequently, we hold that in cases where the defendant properly preserves the objection, the State must show that the machine used for administering a breath test has been certified by SLD.

---

1. Chapter 33 of the New Mexico Administrative Code was recodified as §§ 7.33.2.1 to 7.33.2.18 in 2001. In this opinion we refer to the version in effect at the time of trial.

■ {14} However, Defendant did not preserve this issue for appeal. At trial, Defendant did not focus on the certification requirement. Instead, he briefly pointed out some of the requirements for certification, emphasizing that the machine was not tested every seven days in accordance with 7 NMAC 33.2.11.7.3. This was insufficient to alert the district court to Defendant's contention, now raised on appeal, that the State had to do more than our case law requires, *see Smith*, 1999–NMCA–154, ¶ 13, 128 N.M. 467, 994 P.2d 47, and particularly that the State had to show that the IR–5000 was currently certified by SLD. Similarly, Defendant did not clearly argue that the failure to test the machine every seven days threw its certification in doubt. We do not reach issues on which the district court had insufficient opportunity to rule. *See* Rule 12–216(A) NMRA 2002; *State v. Duncan*, 117 N.M. 407, 414, 872 P.2d 380, 387 (Ct.App.1994), *abrogation on other grounds recognized by State v. Brule*, 1999–NMSC–026, ¶¶ 3–6, 127 N.M. 368, 981 P.2d 782.

■ {15} Absent preservation of an issue, we will review only for plain or fundamental error. *State v. Begay*, 1998–NMSC–029, ¶¶ 20–23, 125 N.M. 541, 964 P.2d 102. To find either, we must harbor serious concerns as to the correctness of the verdict. *State v. Rojo*, 1999–NMSC–001, ¶ 45, 126 N.M. 438, 971 P.2d 829. Defendant's breath test was given by a certified operator trained by SLD to operate the machine. The machine was properly calibrated within seven days before Defendant's test. Nothing in the record causes us to seriously doubt that the verdict is correct.

*Failure to Prove that the Breath Test Results Were Measured in Grams of Alcohol Per 210 Liters of Breath*

■ {16} Defendant argues there was insufficient evidence of aggravated DWI because the State failed to prove the required alcohol-to-breath concentration ratio. Because the State prosecuted Defendant only for aggravated DWI, it was critical for the State to show that Defendant had "an alcohol concentration of sixteen one-hundredths or more in his blood or breath while driving any vehicle within this state." Section 66–8–102(D)(1). Defendant contends the State failed to prove that his breath test results were measured in grams of alcohol per 210 liters of breath as required by UJI 14–4506.

{17} We have reviewed the entire official recording of the trial and we agree that the State failed to show the unit of measurement for the breath test. However, we are not persuaded that the unit of measurement is an element of aggravated DWI. Section 66–8–102(D)(1), the statute defining the relevant offense, makes no mention of grams per 210 liters of breath. The legislature provided that anyone driving in New Mexico has consented "to chemical tests of his breath or blood or both, approved by the scientific laboratory division of the department of health." Section 66–8–107(A). It decreed that the results of such test(s) will be admissible. Section 66–8–110(A). As part of the statute establishing the admissibility of breath testing, the legislature specified, "The determination of alcohol concentration shall be based on the grams of alcohol in one hundred milliliters of blood or the grams of alcohol in two hundred ten liters of breath." Section 66–8–110(E). Because this is the sort of scientific gatekeeping that is usually assigned to the judge, not the jury, we conclude that the legislature intended that showing the correct measurement ratio would be part of the foundation for admitting the test results. *See State v. Campos*, 1996–NMSC–043, ¶ 27, 122 N.M. 148, 921 P.2d 1266 ("In a jury trial, the judge functions as a gatekeeper, filtering the evidence actually presented to the factfinder to ensure that the factfinder's conclusions are not based on improper considerations or evidence.").

■ {18} Defendant contends that the relevant jury instruction treats the measurement ratio as an element of the offense. The jury instruction for aggravated DWI, aggravated driving with alcohol concentration of (.16) or more, reads:

> For you to find the defendant guilty of aggravated driving while under the influence of intoxicating liquor ..., the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant operated a motor vehicle;

2. At that time the defendant had an alcohol concentration of sixteen one-hundredths (.16) grams or more in ... [two hundred ten liters of breath];

3. This happened in New Mexico, on or about the _____ day of _____, _____.

UJI 14–4506 NMRA 2002 (footnotes omitted). The verbiage in the second element stating that the measurement is in grams per 210 liters of breath serves to help the jury understand what the defendant's score means; it is not intended to be an independent element of the offense. The instruction tells the jury only that it must find the magnitude of the number, i.e., whether it is 0.16 or higher.

{19} Because we hold the measurement ratio is a foundational requirement for admission rather than an element of the offense, we now consider whether Defendant preserved his objection to admission of his breath test results. To preserve the issue for appeal, Defendant was required to alert the district court to his objection at the time the results of his breath test were offered and entered into evidence. In order to preserve an objection to the admission of evidence for appellate review, a party must make "a timely objection or motion to strike ... stating the specific ground of objection." Rule 11–103(A)(1); *see also State v. Jacobs*, 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127 ("In order to preserve an issue for appeal, it is essential that a party must make a timely objection that specifically apprises the trial court of the claimed error and invokes an intelligent ruling thereon.").

{20} Defendant objected to the admission of the results of his breath test only on the grounds that (1) the State had not shown the scientific reliability of breath testing and (2) it had not shown compliance with the "administrative regulations that require mandatory testing." He did not object that the State had failed to show the results were measured in grams of alcohol per 210 liters of breath. (*See id.*) Defendant waited until closing argument to point out that the State had offered no evidence whatsoever that the machine measured grams of alcohol in liters of breath. He thus failed to preserve his objection to the admission of the test results on this ground. *See State v. Clark*, 108 N.M. 288, 296, 772 P.2d 322, 330 (1989) (stating that failure to object to improper testimony or argument generally bars review on appeal).

{21} Absent preservation of the issue, we review the admission of the test results only for plain or fundamental error. *Begay*, 1998–NMSC–029, ¶¶ 20–23, 125 N.M. 541, 964 P.2d 102. For the reasons explained above, we find neither. *See also State v. Jett*, 111 N.M. 309, 314, 805 P.2d 78, 83 (1991) ("The doctrine [of fundamental error] is not applicable merely to excuse a failure to make a timely objection during trial.").

## CONCLUSION

{22} We affirm Defendant's conviction.

{23} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and CELIA FOY CASTILLO, Judge.