This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.** No. 26,583

**FRANK JULIAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

John Bigelow, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant was convicted of driving while intoxicated (DWI). *See* NMSA 1978 § 66-8-102 (2005) (amended 2007 and 2008). When this case was first before this Court, Defendant raised two issues in relation to the admission of the results of his breath-alcohol test (BAT). First, Defendant argued that the officer did not comply with the twenty-minute deprivation period before he administered the BAT because he did not observe Defendant the entire time; could not tell whether Defendant belched, burped, or regurgitated; and that the officer neither asked him if he had something in his mouth nor inspected his mouth before taking the breath samples. Second, Defendant argued that the State failed to prove the foundation necessary to admit the breathalyzer's calibration log into evidence. Because we reversed and remanded for a new trial on our conclusion that the State had not properly ascertained that Defendant did not have anything to eat, drink, or smoke for at least twenty minutes before the BAT, we did not address Defendant's calibration-log argument. Our Supreme Court granted certiorari, reversed our decision as to Defendant's twenty-minute deprivation period and remanded this case for our consideration on whether the breathalyzer's calibration log was properly admitted into evidence.[1] *State v.*

---

[1] We, of course, do not address Defendant's argument relating to the deprivation period. The Supreme Court addressed this issue. *See State v. Julian*, No. 31,104, slip op. at 12-14 (N.M. Sup. Ct. June 24, 2009).

*Julian*, No. 31,104, slip op. at 2, 15 (N.M. Sup. Ct. June 24, 2009). We affirm the district court's admission of the calibration log.

**BACKGROUND**

In the early morning of September 20, 2005, Defendant was pulled over for erratic driving and, after showing signs of intoxication, he was arrested for DWI. Deputy Duncan administered a BAT to Defendant. The deputy was certified to use a breathalyzer. At trial during direct examination, the State asked Deputy Duncan if on the night in question he checked to make sure that the breathalyzer was certified. Deputy Duncan responded that as far as he knew it was certified. The deputy identified three documents that he recognized and that were notarized, namely, an instrument key operator certificate, a direct alcohol instrument certification (breathalyzer certification), and a copy of the breathalyzer's log book showing calibration-related information (calibration log). He recognized his printed name in the calibration log. The State offered these three documents in evidence as Exhibit 1.

Defendant objected on foundation grounds because there had not been any testimony offered as to calibration of the breathalyzer or as to what regulations must be followed to demonstrate validity of the BAT results. The State responded that the key operator certificate and the breathalyzer certification bore official signatures and would come in as official documents with an official seal. Defendant's counsel renewed his objection arguing that upon proper objection, the State "has the burden

4

of demonstrating the qualifications, particularly, the scientific laboratory division regulations have been met prior to the admission of the [BAT] results."

Referencing the documents, the court noted that the machine had been calibrated and asked defense counsel, "[d]oesn't that meet the requirement of showing that the machine is functioning and in proper order[?]" Defense counsel countered that there had been "no testimony as to what measures were taken to demonstrate that it was calibrated—what kind of checks were run." The court asked the prosecutor to lay more foundation on how the machine was operating to determine whether the State's exhibit would be admitted. Deputy Duncan testified that he "remember[ed] making [his] log entry and observing [the] log" although he did not know how frequently the machine was tested, because he was not a key operator. The prosecutor asked the deputy whether the calibration log indicated that the machine had been tested, and he responded that it did.

Using the log to refresh his memory, Deputy Duncan testified that the machine had been calibrated on September 19, 2005, and again on September 26, 2005, and passed calibration. Based on the calibration log, Deputy Duncan testified that the breathalyzer was properly calibrated when he administered the BAT to Defendant. The court asked Deputy Duncan if he saw any abnormalities in the functioning of the machine, and he responded that he did not. The court further asked if the machine

would indicate on a print out if there were any problems. Deputy Duncan indicated that he did not see anything that would have lead him to believe the breathalyzer was not working properly. Being satisfied with the foundation laid by the State as to calibration, the district court admitted State's Exhibit 1 into evidence.

The State then sought the admission of a "read-out" from the breathalyzer, also known as a BAT card, that contained Defendant's BAT results. Defendant continued to object as to lack of proper foundation. However, the district court admitted the BAT card into evidence, and Deputy Duncan testified that the results shown on Defendant's BAT card were .16 and .16. The court found Defendant guilty of DWI. Defendant appeals.

**DISCUSSION**

There does not appear to have been a dispute at trial regarding admission and the court's consideration of the key operator certificate and the breathalyzer certification. On appeal, Defendant states that he does not dispute that the key operator certificate and the breathalyzer certification were properly admitted as self-authenticating. In his brief in chief, which was filed before our Supreme Court's decision in *State v. Martinez*, 2007-NMSC-025, 141 N.M. 713, 160 P.3d 894, Defendant argues that the calibration log was not authenticated or self-authenticating and also lacked foundation to be admitted in evidence under any hearsay exception.

In *Martinez*, our Supreme Court clarified that with respect to foundation evidence for admission of a BAT card, such as a breathalyzer certification, Rule 11-104(A) NMRA governed and that "the State is not required to have admitted into evidence and prove[d] beyond a reasonable doubt that the testing machine was certified, calibrated and functioning properly at the time the test was taken." *Martinez*, 2007-NMSC-025, ¶¶ 14-15.

Thus, "[w]hether a BAT card may be admitted into evidence is a matter decided solely by the trial court and is not contingent upon its relevancy being established by other facts submitted to the jury." *Id.* ¶ 17. Furthermore, "the trial court may consider hearsay." *Id.* ¶ 21. Addressing *Martinez* in his reply brief, Defendant nevertheless argues that the State chose to seek and obtain admission of the calibration log into evidence, and that *Martinez* does not control the present case because, in *Martinez*, "the State did not attempt to admit the calibration log into evidence—it sought to admit the B.A.T. card." Having chosen to seek admission into evidence of the calibration log, Defendant argues, the State was required to lay a proper foundation but failed to do so because the evidence constituted hearsay and its admission was governed by the hearsay rule of evidence. Therefore, Defendant concludes, the calibration log was erroneously admitted because it was not admitted under any hearsay exception.

"We review an alleged error in the admission of evidence for an abuse of discretion." *Martinez*, 2007-NMSC-025, ¶ 7. In the present case, *Martinez* controls and the district court did not abuse its discretion even though the calibration log was admitted in evidence along with the BAT card. The State must admit the BAT card showing the BAT results in order to prove that a defendant was driving while intoxicated above the legal alcohol limit. *See Martinez*, 2007-NMSC-025, ¶ 13. Compliance with accuracy-ensuring regulations of the Scientific Laboratory Division of the Department of Health is a condition precedent to admission of BAT results. *See Martinez*, 2007-NMSC-025, ¶¶ 11-12; *State v. Gardner*, 1998-NMCA-160, ¶ 11, 126 N.M. 125, 967 P.2d 465. Because certification is an accuracy-ensuring regulation, "the State must make a threshold showing that the machine has been certified" and that the certification was current at the time the test was taken before the BAT results can be admitted. *Martinez*, 2007-NMSC-025, ¶¶ 11-12. Certification is contingent in part on weekly calibration checks. *Id.* ¶¶ 11, 14.

Under Rule 11-104(A), the district court needs to be satisfied that the foundational requirement to admit the evidence has been met by a preponderance of the evidence only, and "the rules of evidence, except those concerning privileges, do not apply" in the court's determination. *Martinez*, 2007-NMSC-025, ¶ 19. There exists a "distinction between the piece of evidence the State is ultimately attempting

8

to have admitted and the evidence the State must initially present to have that evidence admitted." *Id.* ¶ 13. "On one side of the line is the evidence that is to be admitted—the test result—on the other is evidence used to determine whether the test result is admitted in the first place—the foundational requirements." *Id.* A breathalyzer's certification, our Supreme Court noted, is but a foundational requirement tending to prove one of the elements of DWI, not an element to be proved to the factfinder. *Id.* ¶ 23.

In *Martinez*, in order to admit the BAT card into evidence, the officer testified that the breathalyzer was certified and that its certification was current at the time of the test. *Id.* ¶ 3. This was for the purpose of laying a foundation for admission of the BAT card. The defendant objected because the officer had no first-hand knowledge of the machine's certification. *Id.* As a preface to its discussion, the Court stated that before the BAT card could be admitted in evidence, the State had to make threshold showings that (1) "the machine has been certified," and (2) "SLD certification was current at the time the test was taken." *Id.* ¶ 12. The Court noted that the officer's knowledge that the machine was certified and that its certification was current at the time of the test was gained by viewing an SLD certification sticker on the machine. *Id.* ¶¶ 3, 13. The Court held that under Rule 11-104(A) the officer did not have to have personal knowledge that the certification was current for the testimony to be

9

admissible as foundation for admission of the BAT card into evidence. *Martinez*, 2007-NMSC-025, ¶¶ 13-24. The foundation requirement was met with the testimony as to what the officer saw in the document. *Id.* ¶ 22.

In regard to calibration, the Court in *Martinez* pointed out that the district court relied on *State v. Smith*, 1999-NMCA-154, ¶ 11, 128 N.M. 467, 994 P.2d 47, as holding that "an officer [can] testify as to the contents of calibration logs without having first-hand knowledge of the actual calibrations." *Martinez*, 2007-NMSC-025, ¶¶ 3, 21. The Court discussed the regulations governing certification that are accuracy-ensuring regulations, and in doing so, the Court set out not only that a machine must undergo calibration tests before and after initial certification, but also that certification is contingent on, among other things, a calibration check. *Id.* ¶ 11. The Court stated:

> Since they are not elements [of the crime], the State is not required to have admitted into evidence and prove[d] beyond a reasonable doubt that the testing machine was certified, calibrated and functioning properly at the time the test was taken, or that the officer conducting the test was certified by SLD.

*Id.* ¶ 14. The Court then stated that "these are merely foundation requirements that the State must meet before the critical piece of evidence—the test result—is admitted into evidence. *Id.* From the foregoing, we feel bound to read *Martinez* to include the calibration log information as foundation material covered in Rule 11-104(A).

10

Defendant appears to acknowledge that, under *Martinez*, if treated as a foundation requirement, calibration of the breathalyzer would not require a separate foundation to overcome the hearsay rule. However, as we understand his position, Defendant asserts that the State was not using the calibration log as a foundational requirement for admission of the BAT card into evidence but, instead, the State obtained admission of the calibration log itself as independent evidence for the fact finder to consider on the issue of DWI. "The purpose of the State's actions," Defendant argues, "does not negate the requirements of the rules of evidence." We are unpersuaded.

The State presented along with the calibration log the instrument key operator certificate and the breathalyzer certification to lay a foundation for the ultimate purpose of admitting the BAT card into evidence. Because these documents served foundation purposes, the district court did not need to apply the rules of evidence in its determination to admit and consider them. *See Martinez*, 2007-NMSC-025, ¶¶ 14, 15, 19, 21, 23. Defendant has not shown any harm or prejudice from the admission of the calibration log in evidence. Indeed, given *Martinez*, we do not see how the admission of the calibration log in evidence as foundation for admission of the BAT card could constitute prejudicial error in this court-tried case. We hold that the district court did not abuse its discretion by admitting the calibration log into evidence.

**CONCLUSION**

We affirm Defendant's conviction for DWI.

**IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**I CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**RODERICK T. KENNEDY, Judge (dissenting).**

**KENNEDY, J. (dissenting)**

I respectfully dissent. This case presents a police officer whose completely honest lack of knowledge about the documentary evidence supporting the foundation of the breath test does not slow down its wrongful admission. I see nothing to recognize in the record of this case to resemble a reliably developed foundation for the breath test. Of the three documents admitted to establish that Defendant was tested by a properly certified and regulated breath test device, two were unchallenged, none but the officer's own log entry was independently authenticated, and the issue of whether the test was performed on a currently certified machine is, in my view, not established to an appropriate legal standard. Jumping from the existence of documents to proving a foundation in the district court was a slack-jawed process I cannot in good conscience support.

I believe *Martinez* is of limited precedential value, and supports such sloppy practice that might in another case contribute to some substantial injustice, should a DWI defendant actually be innocent. That case should be distinguished on its horribly misunderstood facts. The Supreme Court had it easy in *Martinez*, saying that an *unchallenged* annual certificate of dubious provenance was evidence of current certification. *Martinez*, 2007-NMSC-025, ¶ 13. As defense counsel stated when asked about the nature of the mythic "SLD sticker" during oral argument in *Martinez*,

"I've actually never seen one on a machine myself." Audio Tape: *State v. Martinez* and *State v. Lissol* oral argument, held by the New Mexico Supreme Court, Tape 1 at 589 (Mar 12, 2007) (on file with author). Indeed, *Martinez* itself suggests it should be thus limited to allowing a foundation to be laid for a chemical test based on unchallenged testimony rather than supporting a judicial assessment based of evidentiary quality. *Martinez*, 2007-NMSC-025, ¶ 25. *Martinez* weakly stated that as a result, "[the Supreme Court] cannot say that admitting the BAT card in this case was clearly contrary to logic and the facts and circumstances of the case." *Id*. ¶ 23 (internal quotation marks and citation omitted). Unchallenged testimony is the hobgoblin of appellate work and, as a result no one in that case ever wondered whether the certificate "sticker" was for the whole year, or indicated "current" certification based on compliance with the regulations.

Assuming the certificate in this case is allowable, it is in and of itself insufficient to support the current certification of the machine. We recognized the contingent nature of an annual certification in *State v. Onsurez*, 2002-NMCA-082, ¶ 13, 132 N.M. 485, 51 P.3d 528. The Supreme Court specifically held that "the Legislature required compliance with the regulations [addressed in *Onsurez* concerning requirements of ongoing certification] in order to ensure accurate results," and that "if an accuracy-ensuring regulation is not satisfied, the result of the test in

14

question may be deemed unreliable and excluded." *State v. Dedman*, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628. From this, New Mexico's courts properly concluded that *certification of an instrument to be in use is contingent from moment to moment on whether the mandatory requirements of the other regulations that are designed to ensure an accurate test are complied with.*

In this case, Deputy Duncan was asked to authenticate three documents which are significant to establish that a breath test is administered on a device that is capable of producing a valid result worthy of being used to turn the tide of a case from innocence to guilt beyond a reasonable doubt.[2] His testimony was simply that the documents he was shown said what they said, bore a notary seal, and that he had seen one of them before when he wrote on it. No testimony in the record directly associated the certification for the machine or the key operator certificate with the machine producing the breath card containing Defendant's test result, upon which was also clearly printed the machine serial number. 7.33.2.12(B)(2) NMAC (breath tests only to be administered on machines certified by SLD); 7.33.2.11(F) NMAC (at least one key operator is assigned to a specific machine and lack of a key operator is grounds for suspension or revocation of certification of machine). Deputy Duncan did

---

[2] None of those three documents was seen fit to be included by the court or counsel in the record sent to us.

not authenticate the documents; they must have been admitted because they were notarized. No matter, since defense counsel did not object.

Deputy Duncan was unflaggingly honest and forthright in his desire to distinguish what he knew from what others might attribute to him. His response to the question "[D]id you check to make sure the machine was certified? Or, do you have personal knowledge that it is certified?" was answered "As far as I know, it was certified." Particularly with regard to the log showing any record of calibration, what the majority refer to as "refreshing his memory" that the machine had been calibrated on certain dates shows no memory to be refreshed when he clearly testified "I don't know. I'm not a key operator[]" when asked "How frequently is [the] machine tested?"

Actually, the reality is worse. The notion that anything was "refreshed" is only the prosecutor's question, "If you can refresh your memory from that log, when was it tested prior to you using the machine?" Deputy Duncan responded, "[t]hat's what they wrote here. Unless I'm looking at it wrong." After reading some dates from the document, Deputy Duncan was asked by the prosecutor, "And, did it . . . pass this calibration on the night in question?" Deputy Duncan then stated, "According to this, yes." Deputy Duncan had clearly testified that he had no personal knowledge of the contents of the document and an unprepared prosecutor was grasping at very short

16

straws. Deputy Duncan clearly was testifying from the document, he had no memory to refresh, and it was the document's hearsay contents that constitute the record to which the majority point. Other than an ability to read, Deputy Duncan had nothing of evidentiary value to offer relative to the other entries in the log, or any of the other documents, which were blithely admitted by the district court, and his answers were clearly contingent on some other actors having correctly done their job and signed off on it. The machine log was incompetent evidence and considering it was an abuse of discretion for the lack of foundation for its contents.

From the breath card itself, one can deduce that this was Intoxilyzer, Serial No. 66-004641. No evidence was offered to show that this machine was specifically the subject of either the machine certificate or the key operator certificate tendered to the court (and we do not have the documents themselves). Deputy Duncan was not a key operator and unable to testify to any requisite calibration checks in the past or future from the breath test he gave Defendant. He could testify to no other testing of the machine from his own knowledge. Rule 11-602 NMRA ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). This would include whether the calibration tests were performed by a key operator as required by law. Hence, the log book entries in that regard were unsupported since Deputy Duncan had no recollection

17

to refresh on those subjects. The test result was unsupported by adequate foundation and should not have been admitted based on the faulty foundation offered by a lax prosecutor. The State did not carry its burden of providing the district court with adequate evidence, and the district court erred in jumping to unwarranted conclusions. I notice that the breath card shows a contemporaneous calibration check that exists unbriefed, unmentioned, and unnoticed right between two test results well north of the legal limit. I regard it as no more a part of this case than the foundation for the test, but cannot help but appreciate the irony of such stretching of an evidentiary foundation in our Court to cover the errors attendant to prosecuting what might, with preparation and effort, have been a simple case establishing Defendant's guilt straightaway, *State v. Marquez*, 2009-NMSC-055, ¶ 29, ___ N.M.___, ___ P.3d ___ (Bosson, R., dissenting).

 

_____

**RODERICK T. KENNEDY, Judge**